UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | Case No. 14-20449 |
| v. | Honorable Laurie J. Michelson |
| HOWARD ERIC JACKSON, | |
| Defendant. | |

**OPINION AND ORDER ON HOWARD JACKSON'S MOTION FOR COMPASSIONATE RELEASE [174]**

Howard Jackson and his two co-defendants all pled guilty to participating in a drug conspiracy. As part of his plea deal, Jackson admitted to distributing quantities of cocaine that resulted in an agreed-upon sentencing guidelines range of 135 to 168 months, with a mandatory minimum of 10 years. (ECF No. 71, PageID.232, 233, 235.) Jackson was sentenced to 135 months' imprisonment. (ECF No. 102.) Since the entry of the judgment, he has tried to reduce his sentence. The Court denied Jackson's post-judgment motion to vacate his sentence under 28 U.S.C. § 2255 (ECF No. 137), which was affirmed by the Court of Appeals on August 10, 2018. (ECF No. 141.) A few weeks letter, on August 23, 2018, Jackson filed a letter asking the Court "if at all possible, [to] reduce [his] sentence." (ECF No. 142.) The request was denied. (ECF No. 143.) Shortly thereafter, Jackson filed a Motion for Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(2), seeking to have his sentence reduced to the statutory mandatory minimum of 120-months. (ECF No. 142). That too was denied. (ECF No. 148.) The following year, on February 14, 2020, Jackson sought a sentence reduction pursuant to 18 U.S.C § 2241. That motion was denied as well on March 16, 2020. (ECF No. 153.)

Then the deadly coronavirus arrived. And it has continued to devastate all aspects of society, including the well-being of those confined in tight quarters at prison facilities. As a result of the pandemic and his underlying health conditions, Jackson has now moved for compassionate release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 174.) But, as the government argues, Jackson's circumstances do not present extraordinary and compelling reasons for a sentence reduction. The motion is DENIED.

## I.

Jackson was sentenced on July 19, 2016. At that time, the presentence report disclosed a life-long, but undiagnosed stomach issue as Jackson's only significant medical health problem. (Presentence Report, ¶ 46.) About a month later, on August 31, 2016, the Court revoked Jackson's bond while he was awaiting his prison report date and remanded him to the custody of the United States Marshal pending execution of his sentence. (ECF No. 100.) Jackson appeared at the bond revocation hearing in a wheelchair and claimed he had recently suffered a stroke. The Court issued an amended judgment and recommended Jackson be placed at the Federal Medical Center in Lexington, Kentucky. (ECF No. 102.)

It is unclear whether Jackson served any of his sentence at a federal medical center. He is presently housed at the Elkton Federal Correctional Institution in Lisbon, Ohio. (ECF No. 174, PageID.1196.) He has a projected release date of March 29, 2026 and thus, has served about 41 percent of his sentence. (ECF No. 174-1, PageID.1209.) Jackson claims he is at heightened risk for death or serious illness from COVID-19 for three reasons: (1) sickle cell anemia trait, (2) a history of strokes and blood clotting, and (3) overall poor health. (ECF No. 174, PageID.1196.) And he believes this constitutes an extraordinary and compelling reason that entitles him to compassionate release. (ECF No. 174, PageID.1206.) The government opposes the motion. (ECF

No. 178.) Having reviewed the briefing, the Court does not believe oral argument would aid in the resolution of the motion. *See* E.D. Mich. LR 7.1(f).

## II.

A district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One exception to this rule is compassionate release. As recently summarized by the Sixth Circuit, four requirements must be satisfied for a defendant's motion for compassionate release to be granted: "(1) the defendant must exhaust all administrative rights to appeal as set out in 18 U.S.C. § 3582(c)(1)(A), (2) the district court must analyze the motion against the factors set forth in Section 3553(a) 'to the extent that they are applicable,' (3) the court must find extraordinary and compelling circumstances warranting compassionate release, and (4) the court must find that release is 'consistent with applicable policy statements issued by the Sentencing Commission.'" *United States v. Gaston*, No. 20-3769 (6th Cir. Nov. 23, 2020) (citing 18 U.S.C. § 3582(c)(1)(A)(i) and *United States v. Ruffin*, 978 F.3d 1000, 1003–05 (6th Cir. 2020)). In these defendant-initiated compassionate release cases, though, "the passage of the First Step Act rendered § 1B1.13 [policy statements] 'inapplicable.'" *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020). District courts may deny relief on any one of these requirements alone. *See Ruffin*, 978 F.3d 106.

### A.

The statutory exhaustion requirement is mandatory. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Jackson submitted a request to the warden for compassionate release on March 31, 2020. (ECF No. 174, PageID.1200; ECF No. 174-4, PageID.1216.) It does not appear he received a response and well more than 30 days have passed. The Government does not contest Jackson's exhaustion of his administrative remedies. (ECF No. 178, PageID.1267.)

**B.**

Jackson must demonstrate "extraordinary and compelling reasons" to justify his early release.

**1.**

The term "extraordinary and compelling" is not defined in the statute; instead, another provision, 28 U.S.C. § 994(t), directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons . . . including the criteria to be applied and a list of specific examples." The Sentencing Commission has done so in the commentary to the applicable policy statement, USSG § 1B1.13, setting forth four specific categories. USSG § 1B1.13, comment n.1. But this policy statement and accompanying commentary have not been updated since the passage of the First Step Act of 2018, which amended § 3582(c)(1)(A) to permit defendants to file motions for compassionate release on their own behalf. As a result, the policy statement still provides that a sentence reduction may be granted only on the Bureau of Prison's motion. See USSG § 1B1.13 & comment n.4. Thus, the Sixth Circuit has now clearly held "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions. *United States v. Elias*, No. 2021 U.S. App. LEXIS 251, at *5–6 (6th Cir. Jan. 6, 2021). "And, in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Id*.

**2.**

Compassionate release is aptly named during a once-in-a-lifetime global pandemic. As is now well known, the deadly "COVID-19 virus is extremely contagious and conditions favor its more rapid transition in detention or correctional facilities." *United States v. You*, No. 20-5390,

2020 WL 3867419, at *1 (6th Cir. Apr. 22, 2020) (Order). But the mere existence of the pandemic has not been found to be an extraordinary and compelling circumstance as this would result in the release of all federal prisoners. And the courts have also consistently found that "[a]n inmate's generalized fear of contracting Covid-19, without more, does not rise to the level of an extraordinary and compelling circumstance." *United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, at *4 (6th Cir. 2020) (unpublished); *United States v. Jackson*, No. 20-5871, 2020 U.S. App. LEXIS 32269, at *6 (6th Cir. Oct. 13, 2020) (order); *see also United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.").

So what is an extraordinary and compelling circumstance in the context of this unprecedented pandemic? In making this determination, this Court, like many others in this District, has considered whether defendants had "severe medical conditions" that placed them at high risk of serious illness from a coronavirus infection, "were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020). Post-*Jones* and *Elias*, these remain appropriate considerations.

**3.**

Jackson's request for immediate release to home confinement centers around his health. Jackson is nearly 45 years old. He believes his history of strokes and sickle cell anemia will subject him to dire consequences should he contract the coronavirus. (ECF No. 174.)

The Court begins by considering Jackson's history of strokes. Jackson claims he had a stroke right after his sentencing in 2016 and another right after his transfer to Elkton. (ECF No.

5

174-4, PageID.1216.) Jackson has not provided any medical records from his pre-incarceration hospitalization in 2016. (ECF No. 179-4.) But a review of the records the Government provided shows that MRIs and CTs were performed. (ECF No. 179-4, PageID.1618–1645.) While Jackson had weakness and numbness in his left arm and leg, it does not appear the doctors believed he suffered a stroke. (*Id.*) As an Elkton doctor indicated during Jackson's December 12, 2016 health services' visit, "reviewed records [from Jackson's August 2016 treatment at Providence Hospital] no radiological evidence of stroke." (ECF No. ECF No. 179-4, PageID.1542.) Elkton also prepared its own radiology report on December 30, 2016 that found "no acute cardiopulmonary disease." (ECF No. 179-3, PageID.1538.)

While prison records from later years recognize Jackson's reported hemiplegia, or paralysis/weakness of one side of the body (ECF No. 179-1, PageID.1410), they do not support a history of strokes. Records from December 2019, for example, detail Jackson's complaints of pain and loss of strength in his left leg and an episode of dizziness on December 4, 2019 for which he was sent to the hospital. (ECF No. 174-4.) The December 4, 2019 prison records indicate that Elkton personnel reviewed outside medical records from the 2016 incident that stated Jackson "had a normal CT and MRI of the brain as well as a normal carotid U/S with an unclear etiology of the hemiplegia." (ECF No. 174-4, PageID.1234.) Upon Jackson's return to the prison, the Elkton doctor summarized: "Patient was sent to the hospital to be evaluated for stroke. He states he has had a stroke in the past (provoked by stress) with left sided weakness. He was evaluated in 2016 for left sided weakness MRI/CT/Echo neurology/PT/OT and all were normal[;] neurology indicates they did not feel he had a stroke." (ECF No. 179-1, PageID.1372.) The prison medical records further report, "patient with episode of dizziness and questionable involuntary movements provides history of stroke which is not supported by records obtained." (ECF No. 179-1,

6

PageID.1373.) He returned from the hospital with no new orders (ECF No. 179-1, PageID.1387), and there are no records indicating a diagnosis of a stroke (ECF No. 179-1).

In sum, the medical records do not support that Jackson has a history of strokes or, even if he did have one in 2016, that the effects should make him more vulnerable than others to the coronavirus. Indeed, it appears he has an out of custody work detail. (ECF No. 174-4, PageID.1217.) So he must be healthy enough to perform that job. *See United States v. Johnson*, No. 10-cr-692, 2020 U.S. Dist. LEXIS 241731, *7–8 (D. Md. Dec. 23, 2020) (court could not find that defendant established extraordinary and compelling circumstances sufficient to justify release where his hypertension was well-controlled and "the medical records acknowledge his 2013 stroke but do not suggest lingering consequences from that event").

As for Jackson's contention that he suffers from sickle cell disease, the medical records are also clear that Jackson has the sickle cell trait, but not the disease itself. (ECF No. 174-4, PageID.1219–1222, 1226; ECF No. 178, PageID.1271.) As another court aptly explained, "[a]t the present time . . . sickle cell trait is not among the CDC's risk factors for COVID. The possibility that Defendant has an increased risk thus is speculative. Accordingly, the Defendant has not shown extraordinary and compelling reasons that would warrant compassionate release based on the current conditions at FCI Elkton and his health situation." *United States v. Thomas*, 10-30046, 2020 U.S. Dist. LEXIS 151965, at *15 (C.D. Ill. Aug. 21, 2020); *see also United States v. DeBerry*, No. 16-CR-142S, 2020 U.S. Dist. LEXIS 237348, at *11–12 (W.D.N.Y. Dec. 17, 2020) (finding defendant was not at elevated risk of severe illness from COVID-19 because sickle cell trait is different from sickle cell disease); *United States v. Pierce*, No. 06-916, 2020 U.S. Dist. LEXIS 218856, at *5 (D. N.J. Nov. 20, 2020) (denying motion for compassionate release where defendant's "most serious condition appears to be a heightened risk for developing sickle cell

disease" but distinguishing sickle cell trait from sickle cell disease). As explained by the CDC, "People with [sickle cell trait] usually do not have any of the symptoms of sickle cell disease (SCD) and live a normal life." CDC, *What You Should Know About Sickle Cell Trait*, https://perma.cc/BAD8-RD8M. And the records indicate that Jackson has never had a sickle cell crisis. (ECF No. 174-4, PageID.1221.)

Jackson's additional reference to "overall poor health" is unclear. His medical records show that he receives appropriate treatment when he does report issues, including being sent to the hospital when warranted. (*See, e.g.*, ECF No. 179, PageID.1337–1339.) But no serious medical conditions have been revealed during his exams and, as the government points out, there is nothing to "indicate that he suffers from any underlying medical condition recognized by the CDC" that would create an increased risk of severe illness from COVID-19. (ECF No. 178, PageID.1272.)

Thus, while the Court understands Jackson's concerns about COVID-19, his medical history and the CDC guidelines do not suggest that his conditions create an "extraordinary and compelling" reason for reduction of his sentence, especially "when considering the great number of people both in and out of prison who are facing these same challenges." *United States v. Williams*, No. 20-3839, 2020 U.S. App. LEXIS 35649, at *4 (6th Cir. Nov. 12, 2020).

Nor does his confinement at Elkton alter this conclusion. Jackson cites an October 26, 2020, news article that reports Elkton has the second highest number of cumulative COVID-19 cases in the BOP system. (ECF No. 174-3, PageID.1214.) That may be true, but it is historical data that reflects the massive outbreak at Elkton during the beginning of the pandemic. That same news article also reports that at the time of publication, there was "only one active infection of an inmate at FCI Elkton." (*Id*.) The BOP website page for COVID-19 is currently reporting 5 active inmate and 29 staff cases as of January 19, 2021. *COVID-19*, Bureau of Prisons,

8

https://www.bop.gov/coronavirus/. The facility is also testing the inmates for COVID-19. Jackson himself tested negative in May, June, November, and December 2020. (ECF No. 179, PageID.1338, 1353, 1356, 1358, 1361.)

Also, in response to Jackson's contention that "there has been absolutely no conversation or guidance of at risk prisoners . . . being inoculated with the vaccine" (ECF No. 174, PageID.1200), the government advises that "[a]s of January 12, 2021, the Bureau of Prisons has acquired 16,050 doses of the Covid-19 vaccine and is distributing it to staff and inmates." (ECF No. 178, PageID.1265, citing CDC Covid-19 Vaccine Tracker.) This is consistent with news reports that, while limited at this time, the BOP has begun to vaccinate some high-risk inmates as well as staff members. *Federal Bureau of Prisons reverses on withholding COVID-19 vaccine from inmates*, The Hill (Dec. 22, 2020), https://perma.cc/39TC-ZABG.

Lastly, Jackson advises that he has been a "model citizen" in prison, has obtained his GED, and has a supportive family waiting for him. (ECF No. 174, PageID.1203, 1205.) The Court commends Jackson for his rehabilitative efforts and believes it bodes well for his future. But this is also conduct that is expected of defendants. It does not rise to the level of "extraordinary." Jackson has served four and a half years of an 11-year sentence for being part of a conspiracy that involved the trafficking of large quantities of cocaine. Indeed, the quantity mandated a sentence of at least 10 years. The Court considered Jackson's history and characteristics, including his family ties and obligations, in sentencing him to the bottom of the guidelines range. The arguments that Jackson presents are not extraordinary and compelling reasons that warrant ending his sentence now.

## III.

Because Jackson has not demonstrated extraordinary and compelling reasons to reduce his sentence to time served, the Court need not evaluate the factors under 18 U.S.C. § 3553(a). Jackson's request for compassionate release (ECF No. 174) is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: January 20, 2021

                                          s/Laurie J. Michelson
                                          LAURIE J. MICHELSON
                                          UNITED STATES DISTRICT JUDGE